UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(6) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDI NUR SALAH,<br><br>Defendant. | ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 27 months in prison.

Defendant Abdi Nur Salah, along with his co-conspirators, operated a non-profit Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, called Stigma-Free International. In October 2020, shortly after the Minnesota Department of Education announced that it was no longer approving food sites run by restaurants and other for-profit companies, the defendant acquired a non-profit entity, Stigma-Free International, for use in carrying out the scheme. The defendant transferred ownership of Stigma-Free International to his co-conspirators, who used it to open a number of new Federal Child Nutrition Program sites around the state of Minnesota, including in Willmar, Mankato, St. Cloud, Waite Park, and St. Paul. Those defendants claimed to be serving meals to tens of thousands of children each

day throughout the state of Minnesota, for which they fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

Over the 12-month period from November 2020 to November 2021, Salah's co-defendants fraudulently claimed to have served nearly 5 million meals to children at the Stigma-Free International sites. In support of these claims, they prepared and submitted fraudulent meal count sheets and invoices. The conspirators also submitted fake attendance rosters purporting to list the names of children who received food at the Stigma-Free International sites. The rosters were fraudulent and the names on them fake.

Based on these fraudulent claims, Feeding Our Future paid out over $10 million in Federal Child Nutrition Program reimbursements for meals purportedly served to children at the Stigma-Free International sites.

The defendant created two shell companies to receive and launder his share of the fraud proceeds. In January 2021, the defendant created Stone Bridge Development LLC, which he used as a shell company to receive and launder his share of the fraud proceeds. The defendant used Stone Bridge Development LLC to receive more than $1 million in Federal Child Nutrition Program funds, which he used to purchase real estate and to fund his own personal spending.

The defendant sent much of the money to other entities he created in order to purchase real estate, including $200,000 to ANS Projects LLC, an entity that the defendant created in August 2021. The defendant used ANS Projects LLC to purchase

a multi-family home in Minneapolis along with another individual involved in the scheme to fraudulently obtain Federal Child Nutrition Program funds.

The defendant and other co-conspirators created another shell company called Five A's Projects LLC. The defendant and other co-conspirators together transferred more than $1 million in Federal Child Nutrition Program funds to Five A's Projects LLC, which they used to purchase the former location of Kelly's 19th Hole, a bar and restaurant in Brooklyn Park, Minnesota.

In all, based on these fraudulent claims, the defendant received approximately $1,659,816 in Federal Child Nutrition Program funds.

Salah was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 3, 4, 6) conspiracy to commit money laundering (Count 41), and money laundering (Counts 58 and 59). Artan pleaded guilty to wire fraud (Count 6) on January 28, 2025.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should

first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

**A. Sentencing Guidelines Range**

The base offense level for wire fraud as charged in Count 6 is 7. PSR ¶ 105. The offense level is increased by 16 levels because the loss was between $1.5 million and $3.5 million. PSR ¶ 106. The PSR contemplates that the offense level is also increased by 2 levels because the defendant acquired a non-profit entity and transferred ownership to his co-conspirators in order to carry out the scheme, as well as created a second company that purported to operate non-profit food sites. PSR ¶ 107. As explained in its objections to the PSR, although the government does not dispute the factual application of this enhancement, it will be asking the Court to sentence Salah as contemplated in the plea agreement. The offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 108.

Finally, the PSR contemplates that the defendant's offense level is decreased by 2 levels because he was a minor participant in any criminal activity. PSR ¶ 110. As stated in the government's PSR objections, the government believes that, based on the totality of the circumstances, Salah was a minimal participant in the offense conduct (rather than a minor participant) and should receive a 4-level decrease pursuant to U.S.S.G. § 3B1.2(a), as contemplated by the plea agreement.

The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 115-116. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). PSR ¶ 114. The defendant falls into Criminal History Category I.

With a total adjusted offense level of 20, and Criminal History Category I (as contemplated by the PSR), the defendant's advisory Guidelines range is 33-41 months in prison and his fine range is $15,000 to $150,000. PSR ¶¶ 152, 164. With a total adjusted offense level of 16, and Criminal History Category I (as contemplated by the plea agreement), the defendant's advisory Guidelines range is 21-27 months in prison and his fine range is $10,000 to $95,000.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Salah participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to

the money and that it was obtained by lying to the government about the number of children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Salah was born in Somalia in 1987 and came to the United States at age 6. He was raised by his mother and her long-term partner, alongside 4 siblings. He has seven children, ranging from age 16 to age 1. He obtained a college degree in 2010 and an MBA in 2017. Prior to the instant offense, the defendant worked as a senior policy advisor to the mayor of Minneapolis between 2017 and 2022. He self-disclosed in the PSR his involvement in various community activities and his book manuscript.

Until recently, the defendant had no serious run-ins with the law aside from the instant offense. However, in the past two months, Salah has been arrested and charged in Hennepin County on two different occasions, both involving the use of controlled substances. He did not report any issues with substance abuse during the PSR, however his state cases have resulted in a referral to inpatient treatment.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Salah's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public

benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Salah included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Salah's conduct appears to be an aberration in his life. He has no criminal history points and ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

### 4. The Need to Avoid Unwanted Disparities

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 94 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Salah, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 26 months. The amount of money Salah received through fraud laundered falls on the lower end of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Salah's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 27 months in prison.

Respectfully Submitted,

Dated: September 24, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Rebecca E. Kline*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys